WO         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

GREYHOUND LINES, INC., a Delaware )
corporation, )
 )
                      Plaintiff, )
 )
      vs. )
 )
VIAD CORPORATION, a Delaware )
corporation; TRANSPORTATION LEASING )
COMPANY, a Delaware corporation, )
 )    No. 2:13-cv-2305-HRH
                    Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendant Viad Corporation moves to dismiss plaintiff's first amended complaint.[1]

This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Greyhound Lines, Inc. Defendant is Viad Corporation.[3]

---

[1]Docket No. 14.

[2]Docket No. 15.

[3]Plaintiff voluntarily dismissed defendant Transportation Leasing Co. on March 12,
(continued...)

On December 22, 1986, the parties' corporate predecessors entered into an Acquisition Agreement, whereby plaintiff acquired real estate and other assets owned by defendant.[4]  "The Acquisition Agreement provided that [d]efendant would indemnify [p]laintiff for any liability or obligation of [d]efendant, as well as [for] any claim for property damage resulting from [d]efendant's prior activities at the transferred properties."[5]

On March 18, 1987, the parties entered into a Third Amendment to the Acquisition Agreement which "provided that [d]efendant would indemnify [p]laintiff for [d]efendant's proportionate share of costs, fees, expenses, fines, penalties, or any governmental levies associated with environmental remediation necessitated by leaking underground storage tanks and other hazardous substances located at properties previously owned by [d]efendant which had been sold to [p]laintiff."[6]

In August 1991, the parties entered into "a Claims Treatment Agreement which modified the indemnity provisions of the Third Amendment.  The Claims Treatment

---

[3](...continued)
2014.  Docket No. 10.  However, plaintiff's first amended complaint, which was filed on May 7, 2014, continues to name Transportation Leasing as a defendant.

[4]First Amended Complaint [etc.] at 3, ¶¶ 10-11, Docket No. 13.

[5]Id. at 4, ¶ 12.

[6]Id. at ¶ 13.

Agreement required [d]efendant to indemnify [p]laintiff for environmental liabilities which were identified prior to March 1, 1992."[7]  "On October 1, 1991, [d]efendant confirmed by letter sent to [p]laintiff, the proportionate allocation of [d]efendant's liability and obligation to pay for environmental assessment and remediation costs associated with forty-one (41) identified properties...."[8]

"On March 10, 1999, [p]laintiff and [d]efendant entered into a Settlement Agreement ... whereby [d]efendant confirmed its indemnity obligations to [p]laintiff for properties where [d]efendant was notified about contamination prior to March 1, 1992."[9]  The Settlement Agreement provides that plaintiff "shall be liable for and shall perform all Environmental Obligations with respect to all Properties, except for Environmental

---

[7] Id. at ¶ 16.

[8] Id. at ¶ 17.  Plaintiff intended to attach a copy of this letter and a August 21, 1999 letter that refers to the 41 properties to its first amended complaint, but failed to do so. Plaintiff requests that the court take judicial notice of these letters.  While these letters are not the type of documents that the court would generally take judicial notice of, the court may nonetheless consider these letters without converting the instant motion to dismiss into a motion for summary judgment because they are referred to in the first amended complaint.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").  Plaintiff also requests that the court take judicial notice of two court opinions but does not rely on these opinions in support of its arguments herein.  Therefore, plaintiff's request as to the two court opinions is denied.

[9] First Amended Complaint [etc.] at 6, ¶ 19, Docket No. 13.

Obligations which" defendant was notified about prior to March 1, 1992.[10] The Settlement Agreement further provides that defendant continues to be liable for Environmental Obligations about which it was notified prior to March 1, 1992.[11] "Environmental Obligations" are defined in the 1999 Settlement Agreement as:

> any and all liabilities and obligations, whether statutory, regulatory, contractual, legal, financial or otherwise, relating to the physical or environmental condition of a Property..., including but not limited to the presence, use or release of Hazardous Materials ... at a Property, the migration of Hazardous Materials to or from a Property, the transportation of Hazardous Materials from a Property, or off-site disposal of Hazardous Materials which were kept, used or stored at a Property, regardless of whether such liability or obligation is predicated upon tort, contract, strict liability, warranty, Superfund, the <u>Comprehensive Environmental Response, Compensation, and Liability Act of 1980</u>..., the Resource Conservation and Recovery Act,... or any other state or federal statute, law, ordinance, or other basis of liability for damage to the environment[.[12]]

Plaintiff alleges that it "has incurred and continues to incur substantial costs associated with the performance of assessment and remediation of contamination at the Listed Properties, which contamination was identified prior to March 1, 1992, and of which

---

[10] 1999 Settlement Agreement at 3, ¶ 3.1, Exhibit 1, Defendant's Motion to Dismiss the First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), Docket No. 14.

[11] <u>Id.</u> at 4, ¶ 3.2.

[12] <u>Id.</u> at 2, ¶ 2.1 (emphasis added).

[d]efendant had actual knowledge prior to March 1, 1992."[13] Plaintiff further alleges that it "has notified [d]efendant of its indemnification obligation and demanded indemnification" but that "[d]efendant has failed to provide any response to [p]laintiff's demands for indemnification."[14]

On November 12, 2013, plaintiff commenced this action in which it seeks to recover the remediation costs it has incurred in connection with the 41 Listed Properties. In its amended complaint, plaintiff asserts a CERCLA cost recovery claim, a breach of contract claim, an express contractual indemnity claim, and a claim for declaratory relief in which plaintiff asks the court to declare, based on its agreements with defendant, that "[d]efendant is liable for all past and future response costs or other costs, liabilities or damages arising from the contamination originating on the Listed Properties[.]"[15]

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's amended complaint.

### Discussion

"'To survive a motion to dismiss,'" brought pursuant to Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[13] First Amended Complaint [etc.] at 7, ¶ 22, Docket No. 13.

[14] Id. at ¶ 23.

[15] Id. at 12, ¶ 3.

plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Id. The court "'accept[s] as true all well pleaded facts in the complaint and construe[s] them in the light most favorable to the nonmoving party.'" Zadrozny v. Bank of New York Mellon, 720 F.3d 1163, 1167 (9th Cir. 2013) (quoting Henry A. v. Willden, 678 F.3d 991, 998 (9th Cir. 2012)).

Defendant first argues that plaintiff's CERCLA claim must be dismissed because it is barred by the parties' contracts. "[U]nder CERCLA, private parties can contractually allocate potential CERCLA liability among themselves." DRR, L.L.C. v. Sears, Roebuck and Co., 949 F. Supp. 1132, 1142 (D. Del. 1996). Defendant argues that in its agreements with plaintiff, the parties expressly allocated liability and indemnification obligations between them with respect to all environmental obligations, including any obligations under

CERCLA. More specifically, defendant contends that § 3.1 of the 1999 Settlement Agreement limits plaintiff's remedies against it to a contractual indemnification claim. Section 3.1 of the 1999 Settlement Agreement provides, in pertinent part:

> The indemnities in the Acquisition Agreement as they relate to Environmental Obligations shall be modified as follows: (i) [defendant] shall have no obligation to indemnify [plaintiff] for any liabilities for Environmental Obligations with respect to Properties, regardless of when the acts giving rise to liability occurred, and [plaintiff] shall assume all such Environmental Obligations and indemnities with respect to all Properties, except (A) indemnities arising from Environmental Obligations which [defendant was] Notified about prior to the Effective Date.[16]

Defendant argues that under this provision, the only possible exposure it has is for "indemnities" to plaintiff and thus plaintiff has waived its right to bring any claim other than a contractual indemnification claim.

The mere fact that the parties have an indemnification agreement does not mean that plaintiff's CERCLA claim is barred. See, e.g., Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 866 (9th Cir. 2001) (the plaintiff asserted both a § 107 cost recovery claim as well as a claim for indemnification against the Partnership defendants). In § 3.1 of the 1999 Settlement Agreement, which is the only contract between the parties that is currently before the court, the parties agreed to allocate CERCLA losses. But § 3.1 does not address

---

[16] 1999 Settlement Agreement at 3, ¶ 3.1(a), Exhibit 1, Defendant's Motion to Dismiss the First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), Docket No. 14.

remedies. Nothing in § 3.1 indicates that plaintiff's only remedy in connection with the Listed Properties is contractual indemnification. The court cannot conclude, based on what is currently before it, that plaintiff gave up its right to pursue a CERCLA claim against defendant in connection with the Listed Properties.

Defendant next argues that plaintiff has failed to plead sufficient facts in support of its CERCLA claim. "Under CERCLA section 107(a), 42 U.S.C. § 9607(a), a private party may 'recover expenses associated with cleaning up contaminated sites.'" City of Colton v. Amer. Promotional Events, Inc.-West, 614 F.3d 998, 1002 (9th Cir. 2010) (quoting United States v. Atl. Research Corp., 551 U.S. 128, 131 (2007)).

> To establish a prima facie claim for recovery of response costs under section 107(a), a private-party plaintiff must demonstrate:
>
>> "(1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan,' 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a)."

Id. at 1002-03 (quoting Carson Harbor, 270 F.3d at 870–71).  Defendant argues that plaintiff has failed to allege sufficient factual support for the second and third elements.

As for the second element, defendant argues that plaintiff has failed to identify any specific "hazardous substances" that have been released at any of the 41 Listed Properties. In its amended complaint, plaintiff alleges that "[c]ontamination by petroleum products and other hazardous substances has been identified at the Listed Properties"[17] but under CERCLA, the term "hazardous substance" "does not include petroleum...." 42 U.S.C. § 9601(14) .  Plaintiff also alleges that "arsenic, chromium, and polyaromatic hydrocarbons[] have been released at the Listed Properties."[18]  These substances might  be "hazardous substances" for purposes of CERCLA, but defendant argues that this allegation is not sufficient to make plaintiff's CERCLA claim plausible because plaintiff has failed to allege on which of the Listed Properties these substances were found.

In Hobart Corp. v. Dayton Power & Light Co., --- F. Supp. 2d ---, 2014 WL 631509, at *13 (S.D. Ohio 2014), the defendants made a similar argument.  They "argue[d] that the First Amended Complaint is deficient because it contains no specific allegations concerning what kind of hazardous substance each of the 30+ individual defendants allegedly released, how those releases occurred, or when they occurred." Id.  The court rejected this argument

---

[17]First Amended Complaint [etc.] at 7, ¶ 20, Docket No. 13.

[18]Id. at 7, ¶ 27.

because "[a]t this stage of the litigation, [the p]laintiffs need not identify exactly which hazardous substances were released by which defendants, in what manner, or on what specific dates." Id.; see also, Arkema Inc. v. Anderson Roofing Co., 719 F. Supp. 2d 1318, 1332 (D. Or. 2010) (holding that complaint alleging location of release, kinds of waste involved, and indicating time frame when the defendant allegedly arranged for disposal at site, was sufficient). Similarly here, the court finds plaintiff's allegations regarding the release of hazardous substances sufficient to state a plausible claim.

As for the third element of a CERCLA cost recovery claim, defendant argues that plaintiff has failed to allege that it has incurred "necessary" response costs that are "consistent" with the National Contingency Plan (NCP). "Response costs are considered necessary when 'an actual and real threat to human health or the environment exist[s].'" City of Colton, 614 F.3d at 1003 (quoting Carson Harbor, 270 F.3d at 871). "Response costs are considered consistent with the NCP 'if the action, when evaluated as a whole, is in substantial compliance'" with it." Id. (quoting 40 C.F.R. § 300.700(c)(3)(i)). "The NCP 'specifies procedures for preparing and responding to contaminations....'" Id. (quoting Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 161 n.2 (2004)). "'It is designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment.'" Id. (quoting Carson Harbor Village LTD. v. County of Los Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006)).

Defendant argues that it is not sufficient that plaintiff alleges that "[a]ll costs incurred or to be incurred by [p]laintiff in connection with the investigation and remediation of the Listed Properties are necessary costs of response consistent with the National Contingency Plan."[19] In <u>Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.</u>, Case No. 08-2151 (JAF), 2010 WL 682542, at *4 (D. Puerto Rico, Feb. 22, 2010), the defendant asserted a CERCLA counterclaim, in which it alleged that it "'ha[d] incurred necessary costs of response consistent with the [NCP] to address the release or disposal of hazardous substances ... unrelated to fuel UST operations at' the station." The court found this allegation insufficient because although it could "infer from this averment that Defendant has undertaken some form of remedial action with attendant expenses[,] ... the statement is conclusory with respect to the manner in which such measure conforms with the NCP, because [it provides] no details from which to infer Defendant's compliance with CERCLA." <u>Id.</u> Similarly here, defendant argues that plaintiff's CERCLA claim contains no details from which the court could infer that plaintiff has complied with CERCLA. Defendant insists that plaintiff must provide some details as to the costs it has incurred and some explanation as to why those costs were necessary and how they were consistent with the NCP.

---

[19]First Amended Complaint [etc.] at 8, ¶ 30, Docket No. 13.

Plaintiff's allegations as to the third element of a CERCLA cost recovery claim are sufficient. In paragraph 29 of plaintiff's first amended complaint, plaintiff alleges that its necessary response costs include the "costs of investigation, removal and/or remedial actions" and that it has incurred these costs in connection with "the investigation, clean up and abatement of the releases of hazardous substances at the Listed Properties."[20] And in paragraph 22, plaintiff has alleged that it "has incurred and continues to incur substantial costs associated with the performance of assessment and remediation of contamination at the Listed Properties...."[21] These allegations, read together, create a reasonable inference that plaintiff has incurred necessary costs and that it has complied with CERCLA when remediating the Listed Properties. It can also be inferred from an October 1, 1991 letter between the parties that the remediation that was being done was necessary. The letter addressed six properties for which defendant believed plaintiff had yet to provide any evidence to support an allocation of remediation costs as to those properties.[22] In the letter, defendant requested "either a state letter requesting [plaintiff] commence remediation or

---

[20]First Amended Complaint [etc.] at 8, ¶ 29, Docket No. 13.

[21]Id. at 7, ¶ 22.

[22]Exhibit C at 1, Greyhound Lines, Inc.'s Opposition to Defendant Viad's Motion to Dismiss the First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), Docket No. 15.

evidence that [plaintiff] has commenced remediation, which includes the assessments necessarily connected with remediation work."[23]

In sum, based on what is currently before it, the court finds that plaintiff's CERCLA claim is not barred and that plaintiff has stated a plausible CERCLA cost recovery claim. Because the court declines to dismiss plaintiff's CERCLA claim, it will retain jurisdiction of plaintiff's claim for declaratory relief and plaintiff's state law claims.

## Conclusion

Defendant's motion to dismiss[24] is denied.

DATED at Anchorage, Alaska, this 26th day of August, 2014.

/s/ H. Russel Holland
United States District Judge

---

[23] Id.

[24] Docket No. 14.